1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   JONATHAN GALATZAN
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS (Cal. Bar No. 101281)
   MAXWELL COLL (Cal. Bar No. 312651)
6  Assistant United States Attorney
   Asset Forfeiture/General Crimes Sections
7       Federal Courthouse, 14th Floor
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone: (213) 894-2569/1785
9       Facsimile: (213) 894-0142/0141
        E-mail: Victor.Rodgers@usdoj.gov
10              Maxwell.Coll@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
12
                  UNITED STATES DISTRICT COURT
13
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
14
                       WESTERN DIVISION
15

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CV-06965 |
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6) |
| $600,980.00 IN U.S. CURRENCY, | [FBI] |
| Defendant. | |

        Plaintiff United States of America brings this claim against

defendant $600,980.00 in U.S. Currency, and alleges as follows:

                    JURISDICTION AND VENUE

        1.   The government brings this in rem forfeiture action

pursuant to 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6).

        2.   This Court has jurisdiction over the matter under 28 U.S.C.

§§ 1345 and 1355.

1     3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

2                        PERSONS AND ENTITIES

3     4.    The plaintiff in this action is the United States of

4  America.

5     5.    The defendant in this action is $600,980.00 in U.S.

6  Currency (the "defendant currency") seized by law enforcement

7  officers on or about March 20, 2021, at U.S. Private Vaults at 9182

8  Olympic Boulevard in Beverly Hills, California.

9     6.    The defendant currency is currently in the custody of the

10 United States Marshals Service in this District, where it will remain

11 subject to this Court's jurisdiction during the pendency of this

12 action.

13    7.    The interests of Mitchell Magee may be adversely affected

14 by these proceedings.

15                        BASIS FOR FORFEITURE

16 Background Regarding U.S. Private Faults

17    8.    U.S. Private Vaults ("USPV") is a company that was in the

18 business of renting safe deposit boxes to customers.  By providing

19 and promoting total anonymity, USPV catered to and attracted

20 criminals who sought to keep their identities and the source of their

21 cash beyond the reach of banks, regulators, the IRS, and law

22 enforcement.

23    9.    The company's primary pitch to customers was anonymity, as

24 reflected in its website that provided "Complete Privacy; Biometric

25 Identification; No ID Required."  USPV also boasted in its website

26 "Our business is one of the very few where we don't even want to know

27 your name.  For your privacy and the security of your assets in our

28 vault, **the less we know the better**."  This advertisement appealed to

1  persons engaged in activities which they wished to hide from legal

2  authorities and law-abiding financial institutions.

3      10.  USPV also posted on its website "Four Reasons to Store Your

4  Gold At USPV," information designed to market the company's services,

5  which led to many involved in criminal activities to rent boxes from

6  USPV.  The posting asserted:

7      Banks require clients to provide their social security

8      number and a photo identification as a condition for

9      renting a safe deposit box.  Your information is then filed

10     in the bank's central data system.  This information can be

11     easily accessed by government agencies (such as the IRS) or

12     attorneys armed with court orders. If no one is aware you

13     have a safe deposit box, the contents (your gold) are much

14     safer.

15 By advocating a service which circumvented the IRS and persons "armed

16 with court orders," customers engaged in illegal activity were

17 attracted to and ultimately stored and secreted their criminal

18 proceeds (which the government has a legitimate interest in) at USPV,

19 instead of at banks or law-abiding financial institutions where their

20 illegal activities would more likely be uncovered.

21      11.  In the same post, "Four Reasons to Store Your Gold At

22 USPV", USPV stated:

23     As government chartered institutions, banks are now

24     required to file "suspicious activity reports." . . . U.S.

25     Private Vaults is not subject to federal banking laws and

26     would only cooperate with the government under court order.

27 By marketing services in this fashion, some persons who ultimately

28 became USPV customers, were attracted by the advertisements because

1 USPV's safe deposit box storage facilities offered them a much safer

2 place to store their illegal criminal proceeds, unlike law-abiding

3 banks, so as to eliminate their fear of apprehension by law

4 enforcement and in promotion of their illegal activities.

5      12.   Further, and in order to shield customers from having law

6 enforcement uncover their illegal activity, USPV encouraged its

7 customers pay their box rental fees in cash.  In addition, USPV

8 charged customers significantly higher prices than those charged by

9 major banks, because USPV offered something which legitimate banks do

10 not: anonymity, a place to store illegally obtained cash, tips and

11 assistance in avoiding law enforcement and a willingness to look the

12 other way with regard to all types of criminal conduct.  And one of

13 USPV's owners has gone so far as to brag about bringing to USPV

14 individuals selling marijuana and other drugs illegally, based on the

15 owner's connections, by marketing USPV as a safe place for those

16 criminal actors and potential USPV customers to store their ill-

17 gotten gains.

18      13.   Not surprisingly, because USPV's business model is designed

19 to appeal and cater to criminals, USPV has repeatedly been used by

20 criminals to store criminal proceeds.  Over the years, the contents

21 of specific boxes at USPV have been forfeited because they are the

22 proceeds of criminal activity.  For example, on July 1, 2019,

23 officers seized $215,653 from Michael Beaver, as he was leaving USPV,

24 and then seized an additional $1,448,700 from his USPV boxes.

25 Records from the Employment Development Department (the "EDD"), which

26 is the California agency to whom employers must report wages earned

27 by their employees, showed Beaver had no legitimate employment

28 income.  In addition, Beaver's phones revealed evidence of drug

1  trafficking activity, and the in excess of $1.6 million funds were

2  forfeited as proceeds of unlawful activity.

3      14.  On April 21, 2019, a victim was kidnapped in San Diego and

4  brutally tortured in a warehouse, where the victim was hit with

5  sticks and baseball bats; stripped naked; hit with a hammer on the

6  victim's toes; and set on fire.  Allan Newman was arrested and

7  charged with kidnapping for ransom, attempted murder, torture and

8  aggregated mayhem relative to the beating.  The victim had been

9  employed by a group of people who were engaged in distributing

10  counterfeit marijuana vaping cartridges, and the group believed the

11  victim had stolen a suitcase full of cash, which a vape cartridge

12  customer had left at the warehouse.  A portion of the funds had been

13  placed by the victim's ex-wife in a safe deposit box at USPV, which

14  the ex-wife retrieved and used to pay the victim's ransom.

15      15.  On March 6, 2018, officers seized $101,080 and 26 gold bars

16  from Vincent Ramos' USPV box.  Ramos was the CEO of a company that

17  facilitated the importation, exportation and distribution,

18  internationally, of wholesale quantities of cocaine, heroin and

19  methamphetamine.  The currency and gold bars were forfeited, and

20  Ramos was indicted and pleaded guilty to Racketeering and Drug

21  Trafficking, in the Southern District of California.  See United

22  States v. Ramos, Case No. 18cr1404-WQH.

23      16.  In September 2016, officers seized $592,450 and $435,190,

24  respectively, from two USPV boxes of Mikhail Malykhin, an individual

25  who was the leader of an identity theft/computer intrusion fraud

26  ring.  He and others were involved in a complex scheme involving

27  altering hacked debit cards from a health insurance provider and

28  altering the codes to cash out the debit cards.  Malykhin was

1   indicted and pleaded guilty to committing access device fraud, and

2   the over $1,000,000 in funds seized from Malykhin's boxes were

3   forfeited as proceeds of the fraud and were used to pay restitution

4   to victims of Malykhin's fraud.   See United States v. Malykhin,

5   Central District of California Case No. 16cr0688-DMG.

6        17.   In November 2015, officers seized $1,543,400 from the USPV

7   box of Gerald Lebowitz, which he stated had been brought into the

8   United States illegally to avoid taxes.   However, further

9   investigation revealed that Lebowitz was part of a conspiracy to

10  distribute methaqualone, a controlled substance, and officers seized

11  over 45 kilograms of methaqualone powder and 12 canisters of the

12  chemical o-Taluidine, both chemical precursors, during the course of

13  the investigation.   The funds were forfeited as criminal proceeds.

14  See United States of America v. Lebowitz, Central District of

15  California Case No. 17cr-0053-CAS.

16       18.   On October 28, 2015, officers seized $500,000, 22 gold bars

17  and 15 gold coins from the USPV box of Cyrus Irani, who was the

18  master bookmaker and head of an illegal gambling organization that

19  operated both internet and traditional bookmaking operations, and

20  engaged in money laundering.   He pleaded guilty to Enterprise

21  Corruption, and 14 others in his organization were convicted of

22  various gambling, money laundering and enterprise corruption charges.

23  The assets found in Irani's box were forfeited as criminal proceeds.

24  The Property At Issue In This Case

25       19.   The funds seized from the box at issue in this case is an

26  example of persons storing funds from their criminal activity at

27  USPV, as a result of USPV's advertisements, marketing efforts and

28  other transactions and activities, designed to induce persons to rent

6

1  boxes at USPV to hide their illegal monies.  The funds seized

2  represent the proceeds of criminal activity and were involved in

3  money laundering activity, which therefore renders them subject to

4  forfeiture.

5      20.  Officers found $600,980.00 in U.S. currency (i.e., the

6  defendant currency) inside Mitchell Magee's box no. 504 at USPV.

7  Mitchell Magee has a significant criminal history, which includes

8  convictions on state as well as federal crimes and dates back for

9  over 30 years.  In 1989, he was convicted for possessing or

10  purchasing cocaine base for sale; in 1990, he was convicted for a

11  misdemeanor of exhibiting a firearm; in 1993, he was again convicted

12  for possessing or purchasing cocaine base for sale, and was sentenced

13  to three years in prison; and in 1995 and 1996 he was arrested for

14  grand theft of vehicles.  In addition, he has a felony conviction in

15  1997 for making a false financial statement and was sentenced to 16

16  months in prison.  Also, in 2006, was convicted in the Western

17  District of Kentucky on federal charges of aggravated identity theft

18  (18 U.S.C. § 1028A) and bank fraud (18 U.S.C. § 1344) and was

19  sentenced to 42 months imprisonment, 5 years of supervised release

20  and ordered to pay over $56,000 in restitution.

21      21.  And despite having over $600,000 in his box, Mitchell Magee

22  failed to even pay his $56,000 in restitution, choosing instead to

23  hide his money from the victims he defrauded.  As of today, Mitchell

24  Magee has still failed to pay over $35,000 that is due on the $56,000

25  in restitution, and has not even made any payment towards that

26  restitution since April 2018, or for over three years.  Instead, he

27  has chosen to hide $600,000, in his attempt to shield his assets and

28  avoid having them given to persons he has defrauded.

1    22.   In addition, Mitchell Magee does not have anywhere near

2  sufficient legal sources of income to justify his acquisition and

3  possession of the $600,980.00 defendant currency.  According to the

4  EDD, Mitchell Magee is not employed.  In addition, <u>and over and above</u>

5  <u>the $600,000.00 seized from his USPV box</u>, Mitchell Magee is spending

6  money on other valuable assets for which he has no legal source,

7  including purchasing in November 2020 a 2017 BMW 740 for

8  approximately $47,150, about $23,200 of which was in $100 dollar

9  bills.

10    23.   Mitchell Magee continues to engage in illegal conduct, and

11 officers have found yet more funds derived from his illegal activity.

12 Officers learned that Mitchell Magee rented a storage unit with the

13 name of someone else without that person's permission.  In order to

14 rent the storage unit, Mitchell Magee presented to the storage

15 facility a Florida driver's license in the name of the identity theft

16 victim but bearing Mitchell Magee's photograph.  When officers

17 executed a search warrant on July 15, 2021 on Mitchell Magee's

18 residence, they spoke with Mitchell Magee, showed him the counterfeit

19 Florida driver's license used to rent the storage unit.  In response,

20 Mitchell Magee stated he did not know where he had obtained the

21 counterfeit license.  Officers executed the search warrant on the

22 storage unit on July 15, 2021 and found $190,000.00, and told

23 Mitchell Magee, who seemed to be concerned only with obtaining a

24 receipt for the funds.

25    24.   In addition, Mitchell Magee told officers he had been in

26 prison for bank fraud.  Mitchell Magee described himself as "a white

27 collar guy" while claiming he had nothing to do with drugs.  During

28 / / /

1 the search of Mitchell Magee's residence, officers found yet more

2 funds - - an additional $27,000.00.

3      25.   There are other indicia of narcotic trafficking linking the

4 defendant currency to drug trafficking, in addition to Mitchell

5 Magee's extensive criminal history and lack of legitimate income.

6 Those factors include that the funds were bundled, rubber-banded, and

7 were in denominations consistent with narcotic trafficking.  In

8 addition, a trained, state-certified narcotic detection canine gave a

9 positive alert to the defendant currency, which signifies that the

10 funds had recently been in close proximity with narcotics.  As of the

11 positive alert, the canine had received hundreds of hours of training

12 (including weekly training after the canine's initial certification)

13 in the detection of cocaine, methamphetamine, marijuana and heroin,

14 and the canine alerts to the scent of narcotics for which the canine

15 is trained.  The canine's training has included routinely checking

16 both circulated and uncirculated United States currency, in order to

17 ensure that the canine does not alert to the actual odor of currency

18 itself but instead to the odor of controlled substances on the

19 currency.  Since the canine's initial certification, the canine has

20 been responsible for the location and seizure of controlled

21 substances and United States currency.

22      26.   Mitchell Magee's relative Michael Magee also stored illegal

23 criminal proceeds at USPV.  Officers seized over $300,000 from

24 Michael Magee's box who, like Mitchell Magee, has an extensive

25 criminal history and lacks sources of legal income to justify his

26 possession of funds within his box.  Together, the Magee brothers

27 stored over $900,000 in their USPV boxes, representing illegal

28 proceeds, which they stored to hide their illegal conduct and in an

1  effort to avoid compensating victims for their losses caused by their

2  criminal activities.

3  FIRST CLAIM FOR RELIEF

4       27.  Plaintiff incorporates the allegations of paragraphs 1-26

5  above as though fully set forth herein.

6       28.  Based on the above, plaintiff alleges that the defendant

7  currency represents or is traceable to proceeds of illegal narcotic

8  trafficking, was intended to be used in one or more exchanges for a

9  controlled substance or listed chemical, or was used or intended to

10  be used to facilitate a controlled substance or listed chemical

11  violation, in violation of 21 U.S.C. § 841 et seq.  The defendant

12  currency is therefore subject to forfeiture pursuant to 21 U.S.C.

13  § 881(a)(6).

14  SECOND CLAIM FOR RELIEF

15       29.  Plaintiff incorporates the allegations of paragraphs 1-26

16  above as though fully set forth herein.

17       30.  Based on the above, plaintiff alleges that the defendant

18  currency constitutes or is derived from proceeds traceable to a

19  controlled substance violation, a specified unlawful activity as

20  defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendant

21  currency is therefore subject to forfeiture pursuant to 18 U.S.C.

22  § 981(a)(1)(C).

23  THIRD CLAIM FOR RELIEF

24       31.  Plaintiff incorporates the allegations of paragraphs 1-26

25  above as though fully set forth herein.

26       32.  Based on the above, plaintiff alleges that the defendant

27  currency constitutes or is derived from proceeds traceable to

28  violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device

1   fraud) and/or 1341 (wire fraud), each of which is a specified

2   unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and

3   1961(1)(D).  The defendant currency is therefore subject to

4   forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

5                    FOURTH CLAIM FOR RELIEF

6       33.  Plaintiff incorporates the allegations of paragraphs 1-26

7   above as though fully set forth herein.

8       34.  Based on the above, plaintiff alleges that the defendant

9   currency constitutes property involved in multiple transactions or

10  attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i)

11  or (a)(1)(B)(i), or property traceable to such property, with the

12  specified unlawful activity being a controlled substance or listed

13  chemical violation, and violations of 18 U.S.C. §§ 1028 (identity

14  theft), 1029 (access device fraud) and/or 1341 (wire fraud).  The

15  defendant currency is therefore subject to forfeiture pursuant to 18

16  U.S.C. § 981(a)(1)(A).

17                    FIFTH CLAIM FOR RELIEF

18      35.  Plaintiff incorporates the allegations of paragraphs 1-26

19  above as though fully set forth herein.

20      36.  Based on the above, plaintiff alleges that the defendant

21  currency constitutes property involved in multiple transactions or

22  attempted transactions in violation of 18 U.S.C. § 1957(a), or

23  property traceable to such property, with the specified unlawful

24  activity being a controlled substance or listed chemical violation,

25  and violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access

26  device fraud) and/or 1341 (wire fraud).  The defendant currency is

27  therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

28  / / /

1      WHEREFORE, plaintiff United States of America prays:

2      (a)   that due process issue to enforce the forfeiture of the

3  defendant currency;

4      (b)   that due notice be given to all interested parties to

5  appear and show cause why forfeiture should not be decreed;

6      (c)   that this Court decree forfeiture of the defendant currency

7  to the United States of America for disposition according to law; and

8      (d)   for such other and further relief as this Court may deem

9  just and proper, together with the costs and disbursements of this

10  action.

11  Dated: August 30, 2021          TRACY L. WILKISON
                                    Acting United States Attorney
12                                  SCOTT M. GARRANGER
                                    Assistant United states Attorney
13                                  Chief, Criminal Division

14
                                         /s/
15                                  VICTOR A. RODGERS
                                    MAXWELL COLL
16                                  Assistant United States Attorneys
                                    Asset Forfeiture/General Crimes
17                                  Sections

18                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFICATION

I, Lynne Zelhart, hereby declare that:

1.    I am a Special Agent with the Federal Bureau of Investigation.

2.    I have read the above Complaint for Forfeiture and know the contents thereof.

3.    The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 30, 2021 at Los Angeles, California.


/s/ _Lynne Zelhart_
            Lynne Zelhart

13